**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **A.M., a minor, by and through her Guardian Ad Litem, SHEENA MIXON,**<br><br>**Plaintiff,**<br><br>v.<br><br>**FRESNO UNIFIED SCHOOL DISTRICT and JOHN DOES 1-10,**<br><br>**Defendants.** | 1:16-cv-00725-LJO-SKO<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 34)** |

# I. INTRODUCTION

Plaintiff is a minor, an individual of African-American heritage, and a student at Pyle Elementary School within the Fresno Unified School District ("FUSD"). ECF No. 2 at ¶¶ 5, 11. Plaintiff alleges that Defendant FUSD ("Defendant") and unnamed Doe employees of Defendant unlawfully discriminated against her in the provision of special education services on the basis of Plaintiff's race. Defendant brings the instant motion for summary judgment as to all claims alleged by Plaintiff, asserting that the evidence raises no genuine issue of material fact and Defendant is entitled to judgment as a matter of law. This matter is suitable for disposition without oral argument. *See* Local Rule 230(g). For the following reasons, Defendant's motion is GRANTED IN PART.

# II. PROCEDURAL BACKGROUND

Plaintiff filed her complaint in this action on May 24, 2016. ECF No. 2. In the complaint, Plaintiff alleged that A.M. was denied special education speech services following an evaluation in which the school determined that certain of her language productions were typical of African-American English and not of a disability. *Id*. at ¶¶ 9-11. Plaintiff brings claims under 42 U.S.C. § 1983 ("§ 1983")

for violation of her rights under Title VI of the 1964 Civil Rights Act, *incorporated at* 42 U.S.C. § 2000d, ("First Claim") the Equal Protection Clause of the United States Constitution ("Second Claim"), and under a theory of *Monell* municipal liability ("Third Claim"). ECF No. 2 at ¶¶ 8-26. Plaintiff also brings a claim for injunctive relief ("Fourth Claim") and declaratory relief ("Fifth Claim") under the Equal Protection Clause of the California Constitution, Cal. Const. art I § 7, and for violation of the Unruh Civil Rights Act, *incorporated at* Cal. Civil Code. § 51, ("Sixth Claim"). ECF No. 2 at ¶¶ 27-41. Plaintiff seeks injunctive and declaratory relief, general, special, and statutory damages, and costs and attorney's fees. *Id.* at 10-11; ECF No. 35 (striking Plaintiff's request for punitive damages).

Defendant FUSD filed its motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 on September 22, 2017. ECF No. 34. On October 6, 2017, Plaintiff filed an opposition. ECF No. 36. Defendant filed a reply and motion to strike on October 18, 2017, and Plaintiff filed a response to the motion to strike on October 23, 2017. ECF Nos. 37, 39.

Defendant argues that Plaintiff's Second and Third Claims against FUSD are barred because FUSD, as an arm of the state, is not a "person" for the purposes of § 1983. ECF No. 34-3 at 1. Additionally, Defendant contends that all claims except the First Claim are barred by Eleventh Amendment immunity. ECF No. 34-3 at 2. Finally, Defendant argues that summary judgment is appropriate as to all claims because Plaintiff has failed to exhaust her sovereign remedies. *Id*. Plaintiff opposes summary judgment, arguing that Congress has abrogated Eleventh Amendment immunity to private causes of action under Title VI, and that a plaintiff need not exhaust administrative remedies prior to bringing a private cause of action under Title VI. ECF No. 36-1 at 2.

### III. <u>UNDISPUTED FACTUAL BACKGROUND</u>

This short factual background is drawn from the parties' Joint Statement of Undisputed Material Facts in Support of Motion for Summary Judgment. ECF No. 34-1. Defendant is a public school district located in the state of California and is the recipient of federal funds as defined in Title VI. Before January 12, 2016, Defendant provided A.M. with special education speech services. As a result of a

January 12, 2016, triennial assessment, Defendant determined that A.M. no longer qualified to receive special education speech services. Plaintiff has not brought any administrative action pursuant to 20 U.S.C. § 1415 in this matter. There is no evidence that A.M. has suffered any emotional distress. Plaintiff seeks monetary damages to fund at least one year of private speech services.

## IV. **DISPUTED FACTS**

In addition to the joint undisputed facts, Defendant contends that Plaintiff is seeking reinstatement of her special education speech services. ECF Nos. 34-2 at 5-6; 34-4 at 2. Plaintiff asserts that Defendant's position is based on an unwarranted interpretation of the deposition given by Sheena Mixon, Plaintiff's mother, and that a more accurate interpretation is that Ms. Mixon was unsure if continued special education services are warranted. ECF No. 36-2 at 3-4. Plaintiff states that Ms. Mixon is no longer willing to permit A.M. to receive special education services through FUSD. ECF No. 36-2 at 4.

Defendant also asserts that it does not have a policy regarding special education services as it relates to African-American English, based on the deposition of FUSD speech pathologist Barbara Amerine. ECF Nos. 34-2 at 40; 34-4 at 2. Plaintiff contends that Defendant does have a policy relating to African-American English, as Ms. Amerine stated that FUSD has approved the use of a standard manual and test to be consulted when classifying language productions as African-American English. ECF Nos. 36-1 at 3; 36-2 at 4-5. Plaintiff also points to a notification distributed by FUSD to parents of African-American students regarding testing and assessment of such students for special education services as evidence of the disputed policy. ECF No. 36-3 at 16.

Plaintiff argues that Ms. Mixon has not committed to seeking private speech services for A.M., but is considering the option. ECF Nos. 36-1 at 2; 36-2 at 2. Plaintiff also seeks damages for racial discrimination. *Id*.

## V. **DEFENDANT'S MOTION TO STRIKE**

Defendant objects to the consideration as evidence of four paragraphs from the Declaration of

Sheena Mixon. The first objected-to statement reads "[a]fter due consideration, in light of my first-hand experience with FUSD's racially discriminatory practices, I no longer trust or authorize FUSD to provide special education services to A.M." ECF No. 37-1 at 1. The second statement is "[a]lthough I am amenable to A.M. receiving private tutoring for speech services, I have not committed to same, and will have to evaluate whether it is warranted." *Id.* at 2. Defendant argues that these statements contradict the parties' stipulated and uncontested facts. Defendant does not explain which of the seven uncontested facts conflicts with either statement. There is no direct conflict with any of the facts to which both parties stipulated as to the first statement. *See* ECF No. 34-1 at 1-2.

Plaintiff suggests that both statements are in conflict with item 8 on what is styled "Defendant's Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment." ECF Nos. 34-4 at 2; 39 at 2, 3. Plaintiff also states that she did not stipulate to this fact. ECF No. 39 at 2, 3. The Court notes that Defendant's Separate Statement is not signed by Plaintiff's attorney, while the Joint Statement of Undisputed Facts is signed by both parties. The Court finds no indication whatsoever that Plaintiff agreed to stipulate to item 8 on Defendant's Separate Statement. The Court is also not aware of any law or authority which precludes a party opposing a motion for summary judgment from offering facts in addition to, and not conflicting with, stipulated facts. Accordingly, Defendant's objection is overruled as to the first statement.

Plaintiff contends that the second statement is intended to clarify the sixth undisputed material fact, which reads "Plaintiff seeks recovery of monetary damages in this action to pay for private speech services for at least one year in order for her to catch up." ECF Nos. 34-1 at 2; 39 at 3. To the extent that the statement reflects Ms. Mixon's ambivalence as to the specific type of compensatory education she seeks for her daughter, the statement is not in conflict with the joint statement of material fact. Defendant's objection is overruled as to the second statement.

Defendant also objects to two additional statements from Ms. Mixon, the first of which reads as follows: "After being informed that A.M. was excluded from special education services on the false and

insulting ground that her language errors were in fact productions of 'African American English,' I spoke with the following FUSD employees in an attempt to initiate a non-racially discriminatory IEP: (a) Ron Shepherd; (b) Robert Roellke." ECF No. 37-1 at 3. The second reads: "For the same purpose, I attempted to contact the following FUSD employees, but never heard a response: (a) Cherie Walters; (b) Nicole Evangelinos; (c) Kim Kouflall." *Id*.

Defendant objects to these statements as not relevant to any material fact in dispute. ECF No.37-1 at 3-4. Defendant's objection is overruled. Plaintiff argues that these two statements are probative of the fact that Ms. Mixon was unable to obtain any meaningful relief from FUSD employees, which would excuse her decision not to pursue administrative action. ECF No. 37 at 4, 5. Even though neither party has made any argument as to whether Plaintiff's failure to exhaust her administrative remedies is excusable the efforts of Plaintiff's mother to remedy the dispute through by contacting school officials are material to a determination of whether administrative remedies would be futile or inadequate, or whether FUSD "adopted a policy or practice of generalized applicability that is contrary to the law." *See Hoeft v. Tucson Unified Sch. Dist*. 967 F.2d 1298, 1308 (9th Cir. 1992).

## VI. **STANDARD OF DECISION**

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must

"affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007). In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case. *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

## VII. ANALYSIS

### A. Sovereign Immunity

A court considering a motion related to jurisdiction as well as a motion on the merits generally will decide the jurisdictional issue first, unless the attack on jurisdiction requires consideration of the merits. *Thornhill Pub. Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733-34 (9th Cir. 1979). Therefore, the Court will first consider Defendant's arguments in favor of summary judgment on the jurisdictional issue of sovereign immunity.

Defendant argues, first, that Plaintiff's claims premised on the California Constitution and the

California Unruh Act are barred by Eleventh Amendment immunity, as FUSD is an agency of the State of California. ECF No. 34-3 at 7. Defendant further contends that Plaintiff's claims brought pursuant to Title VI, the Equal Protection Clause, and *Monell* are also barred by Eleventh Amendment immunity, as § 1983 is not an abrogation of that immunity as it applies to state agencies. *Id*. Plaintiff argues that Congress has abrogated Eleventh Amendment immunity in actions brought under Title VI, but does not offer any argument regarding her claims under state law. ECF No. 36-1 at 4-7.

States may assert the Eleventh Amendment as an affirmative defense when they are being sued in federal courts. *ITSI TV Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir.1993). The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has recognized that this language "bars a citizen from bringing suit against the citizen's own State in federal court, even though the express terms of the Amendment refer only to suits by citizens of another State." *Welch v. Texas Dept. of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987). There are three exceptions to this rule:

> First, a state may waive its Eleventh Amendment defense. Second, Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority. Third, under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a suit against a state official when the suit seeks prospective injunctive relief.

*Douglas v. California Dept. of Youth Auth.*, 271 F.3d 812, 817 (9th Cir.2001) (internal citations, ellipsis, and quotation marks omitted).

Plaintiff's claim of Title VI violation fits into the second exception. Congress has provided that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of . . . title VI of the Civil Rights Act of 1964." 42 U.S.C. § 2000d-7(a)(1). "In a suit against a State for a violation of [title VI], remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for

7

such a violation in the suit against any public or private entity other than a State." 42 U.S.C. § 2000d-7(a)(2). FUSD, like other school districts in California, is an arm of the state, and therefore subject to the aforementioned abrogation. *See Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 253 (9th Cir. 1992). Therefore, Plaintiff's Title VI claim is not barred by state sovereign immunity. However, Plaintiff's claims under Equal Protection, *Monell*, and Plaintiff's state law claims are not subject to any Congressional abrogation of Eleventh Amendment immunity.

Plaintiff also argues that her Equal Protection and *Monell* claims under § 1983 are derivative of her Title VI claim, and that private *Monell* and Equal Protection claims are permitted. "[Section] 1983 was not intended to abrogate a State's Eleventh Amendment immunity." *Kentucky v. Graham*, 473 U.S. 159, 169 n. 17 (1985). California could abrogate its own Eleventh Amendment immunity for purposes of suits brought under § 1983, but it has not done son. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985) (holding that the California Constitution does not waive immunity from federal court jurisdiction). Plaintiff cites no authority for her proposition that the abrogation of Eleventh Amendment immunity extends to claims which arise under separate theories and rights, but which are "derivative" of a Title VI claim. Plaintiff's argument as to the Equal Protection clause conflates the existence of a cause of action with the jurisdiction to adjudicate that cause. The two are separate questions. Plaintiff cites *Davis v. Passman*, 442 U.S. 228 (1979), for the proposition that there exists an implied private right of action for damages under the Fifth Amendment Due Process clause. ECF No. 36-1 at 7-8. *Davis*, however, does not help Plaintiff, because the defendant in that case was a United States Congressman sued in his personal capacity. 442 U.S. at 232. Here, Defendant is a state agency. While § 1983 does create a cause of action to enforce rights granted under the Constitution, it does not effectuate an abrogation of Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979).

Plaintiff's *Monell* claim also fails. In *Monell v. Department of Social Services of New York*, the Supreme Court held that at § 1983 claim could be brought against municipalities, as a "municipalities and other local government units" were intended by Congress "to be included among those persons to

whom § 1983 applies." 436 U.S. 658, 690 (1978). *Monell* liability does not extend, however, to state agencies. While school districts within some states are considered local government units, *see Lytle v. Carl*, 382 F.3d 978 (9th Cir. 2004) (school district in Nevada could be subject to *Monell* liability), a California school district is an arm of the state for Eleventh Amendment immunity purposes. *Belanger*, 963 F.2d at 253. Therefore, Plaintiff's *Monell* claim is also barred by Eleventh Amendment immunity.

**B.** **Exhaustion**

Plaintiff's First Claim, for discrimination in violation of Title VI, is the sole remaining claim. Defendant contends that the exhaustion of remedies requirement of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1415(l), applies here, and that Plaintiff has not satisfied the requirement. ECF No. 34-3 at 8-11. Plaintiff responds that, as this action is brought under Title VI, exhaustion is not required. ECF No. 36-1 at 10-14.

The IDEA provides federal funds to help state and local agencies educate children with disabilities while conditioning the funds on compliance with specific goals and procedures. 20 U.S.C. § 1412; *Bd. of Educ. Of Hendrik Hudson Cent. Sch. Dist. v. Rowley* [*Rowley*], 458 U.S. 176, 179-80 (1982) (describing the origin and primary provisions of IDEA). The IDEA is intended "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). A free appropriate public education ("FAPE") is defined as "special education and related services that . . . are provided in conformity with the [IEP] required under section 1414(d)" of the IDEA. 20 U.S.C. § 1401(9). An IEP is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 1414(d)" of the IDEA. 20 U.S.C. § 1401(14). "Parents participate along with teachers and school district representatives in the process of determining what constitutes a 'free appropriate education' for each disabled child." *Hoeft*, 967 F.2d at 1300.

The exhaustion provision in the IDEA reads:

> Nothing in this chapter shall be construed to restrict or limit the rights,

> procedures, and remedies available under the Constitution, the Americans
> with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or
> other Federal statutes protecting the rights of children with disabilities,
> except that before the filing of a civil action under such laws seeking relief
> that is also available under this subchapter, the procedures under
> subsections (f) and (g) of this section shall be exhausted to the same extent
> as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). In short, a student who is seeking "relief that is also available under" the IDEA must exhaust their administrative remedies. The exhaustion requirement imposed by § 1415(l) is non-jurisdictional. *Payne v. Peninsula Sch. Dist.*, 653 F.2d 863, 871 (9th Cir. 2011) (en banc), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). The requirement that parties seeking relief available under the IDEA reflects a preference for allowing "agencies the first opportunity to correct shortcomings in their educational programs[.]" *Payne*, 653 F.3d at 875-76.

### 1. <u>Exhaustion under Title VI</u>

Plaintiff argues that, since her claims are based on racial discrimination in violation of Title VI, the IDEA's exhaustion requirement does not apply at all. ECF No. 36-1 at 10. Relying in *Chowdhury v. Reading Hosp. and Med. Ctr.*, 677 F.2d 317 (3d Cir. 1982), Plaintiff asserts that claims brought under Title VI *never* require administrative exhaustion. ECF No. 36-1 at 13. Defendant does not address this argument specifically, but instead notes that "exhaustion is required where a plaintiff seeks to enforce rights that arise as a result of a denial of a FAPE." ECF No. 34-3 at 10. Defendant argues that Plaintiff's claim, regardless of how it is pled, was based on the denial of a FAPE. *Id*.

The approach to Title VI claims outlined in *Chowdhury* does not apply here for several reasons. First, *Chowdhury*, a case arising in the Third Circuit Court of Appeals, has not been adopted by any Ninth Circuit court. It therefore holds only persuasive precedential weight. Second, *Chowdhury* did not involve the exhaustion requirement at issue in this case. *Chowdhury* addressed an administrative exhaustion requirement stemming from Title VI itself, and in no way purported to reach all cases nominally brought under Title VI. *See* 677 F.2d at 319-20. The exhaustion requirement at issue here arises from the IDEA and was not considered by the *Chowdhury* court. A review of decisions citing

*Chowdhury* reveals that no court has applied the principle relied on by Plaintiff in an IDEA dispute.

Moving to the rationale of the *Chowdhury* decision, Plaintiff's argument does not hold water. The *Chowdhury* court held that Title VI "does not require the exhaustion of the agency funding termination procedures and avenues of judicial review *contained in sections 602 and 603* [of Title VI) as a prerequisite to a private action." 677 F.2d at 322 (emphasis added); *see* 42 U.S.C. § 2000d *et seq*. The *Chowdhury* decision was limited to the exhaustion provision contained in Title VI, and did not purport to encompass all exhaustion provisions. *Id*. at 322. The exhaustion requirement at issue here derives from an entirely separate source, is structured differently, and other policy concerns apply to its application. The decision in *Chowdhury* was premised at least in part on the understanding that the exhaustion requirement in §§ 602 and 603 of Title VI claims were intended to apply to agency enforcement actions and not to the implied private cause of action found in § 601. *Id*. at 320, 322. Requiring a government agency to exhaust administrative remedies before a private individual can bring suit risks not only inordinate delay, but exclusion of the individual from the proceedings, limitations on the available relief, and the possibility that the agency will not investigate a complaint. *Id*. at 321-22.

The other cases cited by Plaintiff are based on similar rationales, and are inapplicable and unconvincing for the same reasons as *Chowdhury*. *See Neighborhood Action Coal. V. City of Canton, Ohio*, 882 F.2d 1012 (6th Cir. 1989) (plaintiff's need not wait for the federal funding agency to exhaust administrative procedures before bringing a private cause of action under Title VI); *Freed v. Consol. Rail Corp.*, 201 F.3d 188 (3d Cir. 2000) (a plaintiff bringing a claim under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, which provides incorporates the remedies, procedures, and rights available under Title VI, need not exhaust agency administrative remedies because the remedies do not provide individual relief); *Subryan v. Regents of Univ. of Colo.*, 813 F. Supp. 753 (D. Colo. 1993) (plaintiff bringing private Title VI claim was not required to exhaust agency administrative remedies because Title VI does not provide a mechanism to actively participate in the administrative process); *Scelsa v. City Univ. of New York*, 806 F. Supp. 1126 (S.D.N.Y. 1992) (same).

The exhaustion provision in § 1415(l) does not require that an agency pursue enforcement before permitting an individual to bring a suit. Instead, it simply requires the individual to avail themselves of the "extensive procedural protections set out in 20 U.S.C. § 1415." *Payne*, 653 F.3d at 871. These procedures do not generate the same risks of undue delay, lack of participation and relief, or an agency decision not to pursue a complaint. Instead, the plaintiff remains in control of the process. The rationale in *Chawdhury* and other cases finding that a Title VI claim need not exhaust the administrative remedies specified in §§ 602 and 603 is therefore not applicable in this matter.

### 2. Exhaustion under the IDEA

Having rejected Plaintiff's position that a Title VI claim need never be exhausted, the Court must consider whether the specific claims here require exhaustion under the IDEA. The Court addresses the issue in three phases. First, the Court must determine whether Plaintiff's claims, which are based on laws protecting against racial discrimination, are of a type included within the scope of § 1415(l). Second, the Court must determine whether the claims seek relief for the denial of a "free appropriate public education," commonly known as a FAPE. *See Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 750 (2017). Finally, the Court must determine whether the remedy sought by Plaintiff is one that an IDEA hearing officer may award. *See Payne*, 653 F.3d at 874; *see also Fry*, 137 S.Ct. at 752 n. 4 (clarifying that the decision does not reach whether exhaustion is required when the specific remedy requested is not one available under the IDEA). If the answer to each of these three questions is in the affirmative, then exhaustion is required.

#### a. Race Discrimination Claims Fall Within the Scope of § 1415(l)

Section 1415(l) purports to apply to civil actions under "the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children with disabilities." One reading of the statute would limit the reach of the IDEA's exhaustion requirement to laws "protecting the rights of children with disabilities," and excluded those laws not specifically focused on children with disabilities. However, several courts have concluded that

12

the exhaustion requirement does apply when a plaintiff brings a civil action under a non-disability based statute, so long as the claim is based on the denial of a FAPE. *See Reyes v. Bedford Cent. Sch. Dist.*, No. 16-CV-2768 (KMK), 2017 WL 4326115, at * 7 (S.D.N.Y. Sept. 17, 2017) (collecting cases applying the § 1415(l) exhaustion requirement in racial discrimination contexts from the Second Circuit Court of Appeals); *Barnett v. Baldwin Cnty. Bd. of Educ*, 60 F. Supp. 3d 1216 (S.D. Ala. 2014) (applying §1415(l) exhaustion requirement to claims based on race based discrimination and 42 U.S.C. § 1983 claims for Fourth and Fourteenth Amendment violations). Additionally, the purpose of the exhaustion provision is to

> allow[] for the exercise of discretion and educational expertise by state and local agencies, afford[] full exploration of technical educational issues, further[] development of a complete factual record, and promote[] judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

*Hoeft*, 967 F.2d at 1303. Finally, civil actions brought to enforce rights under the Constitution, which makes no specific mention of the rights of disabled children, come within the ambit of § 1415(l).

Taking the foregoing into account, it is not apparent that §1415(l) is limited to actions brought under laws specifically focused on individuals with disabilities. Instead, the proper focus is on the *rights* of children with disabilities, regardless of the federal statute from which those rights originate. Those rights include, among others, the right to be free from race based discrimination. Accordingly, the Court finds that Plaintiff's claims are of a type subject to the § 1415(l) exhaustion requirement.

### a. **Plaintiff's Lawsuit Seeks Relief for the Denial of a FAPE**

Having concluded that Plaintiff's claims are not excused from the exhaustion requirement by being brought through a racial discrimination theory, the Court must still determine whether the requirement reaches these specific claims, that is, whether Plaintiff's lawsuit seeks relief for the denial of a FAPE. Defendant's argument applies the "relief-based" analysis applied by the Ninth Circuit. ECF No. 34-3 at 8-11. Under that analysis, the IDEA exhaustion requirement "applies to claims only to the extent that the relief actually sought by the plaintiff could have been provided by the IDEA." *Payne*, 653

13

F.3d at 874. "[C]ourts should start by looking at a complaint's prayer for relief and determine whether the relief sought is also available under the IDEA. If it is not, then it is likely that" exhaustion is not required. *Id*. at 875.

More recently, the Supreme Court clarified the approach courts are to use when determining whether a plaintiff's claims are subject to the IDEA exhaustion requirement in *Fry v. Napoleon Community Schools*. 137 S.Ct. 743. When a suit alleges denial of a FAPE, "the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA," but "if, in a suit brought under a different statute, the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." *Id*. at 754. A court may determine when a plaintiff seeks relief for the denial of a FAPE, as opposed to some other injury which cannot be addressed by relief provided under the IDEA, by considering "the crux–or, in legal-speak, the gravamen–of the plaintiff's complaint, setting aside any attempts at artful pleading." *Fry*, 137 S.Ct. at 755. The "examination should consider substance, not surface," and disregard "magic words," and "attend to the diverse means and ends of the statutes." *Id*.

To guide the analysis of whether the gravamen of the complaint concerns the denial of a FAPE, the Supreme Court offered two questions for courts to consider:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school–say, a public theater or library? And second, could an *adult* at the school–say, an employee or visitor–have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so . . .

*Id*. at 756 (emphasis in original). Additionally, court should consider the history of the proceedings, particularly whether "a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute" and subsequently shifted to a judicial remedy. *Id*. at 757. "[P]rior pursuit of the IDEA's

14

administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE." *Id*.

No evidence has been offered indicating that Plaintiff pursued the IDEA's administrative procedures at any time, and accordingly the history of the proceedings carries no weight. However, the answers to both considerations posed by the Supreme Court in *Fry* indicate that the denial of a FAPE is the true issue of Plaintiff's complaint. The complaint is expressly centered on FUSD's refusal to provide speech services to Plaintiff. The alleged conduct could not have occurred outside of a school because special education speech services are not provided in other contexts. Likewise, an adult visitor could not pursue the same grievance, as FUSD has no obligation to provide special education services to an adult. The act at the center of Plaintiff's complaint is the denial of educational services to a student with a claimed disability. Plaintiff's entitlement to a FAPE, and whether that FAPE was denied due to racial discrimination, is the core issue of her First Claim. Plaintiff's First claim stems from the denial of special education speech services to A.M. because her utterances were considered to be instances of African-American English. Therefore, the Court finds that the gravamen of Plaintiff's complaint does seek redress for FUSD's denial of a FAPE.

### a. The Remedy Sought in Claims () is Available under the IDEA

Plaintiff's remaining claims must be considered independently to determine whether the exhaustion requirement applies. *Payne*, 653 F.3d at 882. Additionally, at a fact-finding state of a proceeding a court may "assess the evidence withhold those [remedies] that are unexhausted and available under the IDEA. *Payne*, 653 F.3d at 882. Plaintiff's Second, Third, Fourth, Fifth, and Sixth Claims are barred by Eleventh Amendment immunity. Plaintiff's request for punitive damages has been stricken pursuant to a stipulation of the parties. ECF No. 35. Plaintiff's remaining claim is for violation of Title VI. Title VI does not state what remedies are available in a suit brought to enforce its provisions. *Barnes v. Gorman*, 536 U.S. 181, 185 (2002). However, Title VI and similar statutes have been construed to provide for "those remedies traditionally available in suits for breach of contract," such as

compensatory damages and injunction. *Id*. at 187.

Exhaustion is required when three types of remedies are sought: (1) "an IDEA remedy or its functional equivalent;" (2) "prospective injunctive relief to alter an IEP or the educational placement of a disabled student;" and (3) "where a plaintiff is seeking to enforce rights that arise as a result of a denial of a [FAPE]." *Payne*, 653 F.3d at 875. "Such claims arise under either the IDEA . . . or its substantive standards . . . so the relief follows directly from the IDEA and is therefore 'available under this subchapter.'" *Id*. (quoting 20 U.S.C. § 1415(l)). A plaintiff may not avoid the exhaustion requirement by limiting a prayer for relief to money damages equivalent to relief available under the IDEA, such as the cost of counseling, tutoring, or private schooling, but courts should not "assume that money damages will be directed toward forms of relief that would be available under the IDEA." *Id*. at 877. If a plaintiff alleges "a plausible claim for damages unrelated to the deprivation of a FAPE, the IDEA does not require her to exhaust administrative remedies." *Id*.

Setting aside those remedies clearly based on state law grounds and punitive damages, Plaintiff seeks the following remedies: (1) "equitable and injunctive relief against future discriminatory conduct;" (2) "a declaratory judgment from the Court establishing the prejudicial nature of Defendant's discriminatory policy and practices as applied to African American students, and requiring said policy to be abolished;" (3) "general and special damages in an amount to be determined at trial;" and (4) costs, attorney's fees, and interest. ECF No. 2 at 10-11.

The discriminatory action alleged is FUSD's provision of a racially discriminatory IEP assessment which denied Plaintiff education services. The manner in which a school district evaluates a student and determines whether a student was eligible for special education is a core concern of the IDEA. 20 U.S.C. § 1414; *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 432 (9th Cir. 2010). The declaratory and injunctive relief Plaintiff seeks flows directly from her evaluation by the school and from the IDEA. *See Payne*, 653 F.3d at 875. Therefore, the Court concludes that Plaintiff's requests for declaratory and injunctive relief are subject to exhaustion, and are DISMISSED WITHOUT

PREJUDICE. *See Payne*, 653 F.3d at 881 ("Unlike a judgment on the merits, a plaintiff's failure to exhaust administrative remedies should result in a dismissal without prejudice.").

With respect to the request for general and special damages, Plaintiff has not specified how the damages are to be calculated. To the extent that Plaintiff seeks damages for racial discrimination, that harm cannot be adequately remedied under the IDEA, and are not subject to exhaustion. *See H.W. v. Long Beach Unified Sch. Dist.*, No. CV 10-07015 JGB(Ex), 2013 WL 12242009, at *9 (C.D. Cal. May 3, 2013). The Court finds that Plaintiff may pursue that remedy without exhaustion. There is a dispute as to whether Plaintiff seeks money damages to pursue compensatory education such as private tutoring. This type of remedy is available under the IDEA and is subject to exhaustion. To the extent that Plaintiff seeks money damages as a substitute for relief available under the IDEA, the claim is DISMISSED WITHOUT PREJUDICE.

Finally, both the Supreme Court and the Ninth Circuit have held that exhaustion is not necessary under the IDEA where it would be futile or inadequate to protect the plaintiff's rights, or where an agency has adopted a policy or general practice that is contrary to the law. *Honig v. Doe*, 484 U.S. 305, 326-27 (1988); *Hoeft*, 967 F.2d at 1303-04. The burden of demonstrating futility or inadequacy lies with the party seeking to avoid exhaustion. *Honig*, 484 U.S. at 327. Plaintiff has made no demonstration that exhaustion would be futile or inadequate.

### VIII. CONCLUSION AND ORDER

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED as to Plaintiff's Second, Third, Fourth, Fifth, and Sixth Claims. Plaintiff's requests for declaratory and injunctive relief are DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: **December 8, 2017**          /s/ Lawrence J. O'Neill
                                     UNITED STATES CHIEF DISTRICT JUDGE